## Case No. 14,690.

### UNITED STATES v. BURNHAM.

[1 Mason, 57.] [1]

Circuit Court, D. Massachusetts.    May Term, 1816.

WRIT OF ERROR—REPLEADER—VIDELICET—OPINION ON MATTERS OF FACT—FORFEITURE.

1. Upon a writ of error, if the verdict below was given upon an immaterial issue, a repleader cannot be awarded; but judgment must be rendered against the party who committed the first fault if there be sufficient matter on which to found such judgment.

2. In an information on the fiftieth section of the collection act of 1799, c. 128 [1 Story's Laws, 617; 1 Stat. 665, :. 22], it is necessary to allege that the goods were unladen in some port or place within a collection district, without a permit from the collector of that port or district. But it will be sufficient if the fact be so, to allege the port or district to be to the attorney unknown. Material matter, although alleged under a videlicet, is traversable, and must be proved as laid. Of the nature and office of a videlicet. Where immaterial matter may be rejected as surplusage or not.

[Cited in Garland v. Davis, 4 How. (45 U. S.) 143.]

3. It is no ground for a bill of exceptions that a court refused to instruct the jury on a point of law, which was so stated that it involved an opinion on matters of fact, as where an opinion was prayed "under the circumstances of the case," which were not found as facts.

[4. Cited in Wicker v. Hoppock, 6 Wall. (73 U. S.) 99, Warren v. Stoddart, 105 U. S. 230, Lawrence v. Porter, 11 C. C. A. 27, 63 Fed. 67, and Judice v. Southern Pac. Co. (La.) 16 South. 817, to the point that, where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it, at a trifling expense, or with reasonable exertions, it is his duty to do it, and he can charge the delinquent with such damages only as with reasonable endeavors and expense he could not prevent.]

This was a writ of error from a judgment of the district court of Massachusetts, rendered upon an information in rem, against certain goods and merchandise seized on land, by the collector of the district of Boston and Charlestown, at Boston, in said district, for an alleged breach of law. The information charged in substance, that the goods and merchandise being of foreign growth, produce, and manufacture, and liable to the payment of duties on importation, were imported and brought into the United States, in some ship or vessel unknown, from some foreign port or place unknown, and "were afterwards, to wit, on the 15th of January, 1816, unladen and delivered from said vessel within the United States, to wit, at Boston, in said district, without a special license or permit from the collector, naval officer, or any other competent officer of said port, for such unlading and delivery, contrary to the statute in such case made and provided." And it is farther charged, that the duties on the same goods had not been paid, or secured to be paid, according to law; by reason of all which they became forfeited.

The claimant [Samuel Burnham] in his plea alleged, that the duties to which the goods, &c., were liable, had been paid or secured to be paid, according to law; and that "they were not unladen, or delivered within the United States, without a special license or permit from the collector of the customs of the United States, at the port or district where said goods were first entered, viz. the district of Memphremagog," and that the goods, &c. have not become forfeited as alleged in the information. The replication on behalf of the United States alleged, that the duties on the goods had not been paid, or secured to be paid, according to law; and "that the same were unladen, and delivered, within the United States, without a special license or permit from the collector of the customs of the United States, at the port where the said goods were entered," and that the same have become forfeited, as in the information alleged, and prayed this to be inquired of by the country; and the issue was accordingly joined by the claimant. At the trial in the district court, a bill of exceptions was filed to the opinion of the court. The bill of exceptions recited the testimony, depositions, and evidence given in the cause, by which, among other things, it appeared, that the goods were brought from Canada into the district of Memphremagog, of which Derby constituted the sole port of entry, and is the place where the office for the collection of duties is established; that the collector of the district resided at Irasburg, about fourteen miles from Derby, and within the district aforesaid, where the goods were entered, and bonds taken for the security of the regular duties, and a permit for unlading granted by the collector upon the application of the claimant, without the goods ever having been seen by the collector, or any other officer of the customs, and without the collector knowing whether the goods were at the time of such entry at Irasburg, or whether they had ever been brought to the port of Derby aforesaid. And thereupon the attorney for the United States moved the court to instruct the jury "that inasmuch as the entry, if any such existed, was made at Irasburg, which was not then, nor ever, a legal port of entry, the supposed entry, as also the

permit supposed to be founded thereon, must be considered as a nullity, and void, and that the forfeiture of the merchandise must, therefore, under all the circumstances of the case, be considered as resulting of course." But the said judge did then and there refuse so to direct the jury; and did then and there, in summing up the cause to the jury, declare. "that although the said town of Irasburg, where the said entry of the goods was effected, was not at the time a port of entry, still he was not prepared to express an opinion, if the jury should find that the goods were entered at Irasburg, that such an entry was merely a nullity, so as to expose the goods to forfeiture merely on that ground," and the jury then and there rendered their verdict on the issue aforesaid in favor of the claimants, upon which judgment was rendered against the United States.

The cause was now argued on the assignment of errors by—

G. Blake, U. S. Dist. Atty.

A. Townsend, for defendant in error.

Mr. Blake. The question which is presented by this case, is, whether a collector of the customs can enter goods at a port which is not a port of entry. If he cannot. the instrument granted in this case was not such a permit as the law contemplates. The collection act of March 2, 1799, from the first to the eighteenth section both inclusive, designates certain ports within specified districts as ports of entry and delivery. The eighteenth section of the same act, makes it unlawful to make entry of vessels from foreign ports, at any other than the said ports of entry. The fiftieth section provides that no vessels from any foreign ports shall be unladen, without a permit from the collector, &c. of the port at which they are so unladen. The twentieth section provides for the personal attendance of the collectors. naval officers. and surveyors, at the ports to which they are respectively assigned. Now it appears in this case, that the goods were not entered at a port of entry nor during the attendance of the collector, or any of his officers; under which circumstances we contend the court ought to have instructed the jury, that the permit given was illegal and void, and, therefore, that no entry was in fact made.

Mr. Townsend. The question presented by the district attorney is no longer open to him. The forfeiture in this case is highly penal, and he ought so to have formed his information, as to give notice to the other party what was the ground relied upon; we should then have come into court prepared to show that the entry was a legal one. The gist of the information is, that the goods were entered without a permit, and without the payment of duties, but the jury have found that they were entered by permit, and the bond taken by the government is perfect evidence of the security of the duties. The entry at Irasburg, which is an essential fact, has not been relied on, and the gentleman has precluded us from a trial as to that point, by not offering us an issue upon it. The appraised value of the goods, is their value deducting the duties; now, shall it be in the power of the United States to seize these goods for nonpayment of duties, when at the same time there is a paper in the case acknowledging the receipt of them? As to the construction which ought to be put on the collection act, it is contended that the United States have put their own construction upon it, through their agent in this case, the collector of Derby. The defendant, entering his goods according to the directions of the officer of the government, who must be supposed acquainted with his duty, and rightly informed of the construction given to the laws relative to his particular department. surely acted under sufficient authority, and it is to be presumed with perfect innocence. And if in consequence of such an entry, the goods should be forfeited, the government become gainers by the ignorance or fraud of their own officers.

Mr. Blake in reply. Notwithstanding the objections offered to the form of the information, I apprehend that the ground taken by it is the true ground.. If it shall be thought by the court that the entry of goods at a port which is not a port of entry, is an illegal and void entry, then the allegation of the information that there was no permit, is correct. Every part of the collection act indicates the intention of its framers, that the goods to be entered should be inspected by the officers appointed for that purpose. The sickness or absence of the collector is provided for by the appointment of other officers to act in his place under such circumstances. and it is evident to every one, that if this were not the case, the frauds committed upon the revenue would be innumerable. The law has gone so far as to leave it to the discretion of the secretary of the treasury to increase the number of ports of entry. when he shall think it advisable so to do, the better to provide against the want of proper attention; but if it is in the power of the collectors to dispense with this attention when their convenience may urge it, the law would be completely frustrated, and the favors of the collectors be distributed far and wide.

THE COURT here making some remarks upon the pleadings, observed to Mr. Townsend that such were their defects, that even should the point of law raised in the bill of exceptions, be decided in favor of the defendant, still the court would be obliged to give judgment against the party who committed the first fault, and in that case it would be in favor of the United States; for notwithstanding the faults of the information, it certainly contained sufficient matter to warrant a judgment, and that the plea of the defendant was insufficient. the issues immaterial. and the verdict of the jury did not reach the real point in controversy.

In answer to this. the counsel for the defendant argued to the court, that the videlicet in the information, and the words introduced under it, alleging that the goods were unladen at Boston, might be rejected as surplusage, by which means the faults in the pleadings would be remedied.

But THE COURT decided, that as the immaterial matter made a part of a material averment, it could not be rejected.

The following opinion was afterwards delivered at an adjourned meeting of the court:

STORY, Circuit Justice. Rarely has any record come before the court, attended with more embarrassing circumstances, where the merits of the cause lay in so narrow a compass. The information in substance charges, that the goods and merchandise being of foreign growth and manufacture, and liable to the payment of duties, were imported and brought into the United States from some foreign port or place unknown, and being so imported, were afterwards unladen, and delivered from the said vessel, within the United States, to wit, at the port of Boston, in the district of Boston and Charlestown, without a special permit or license from the collector, naval officer, or other competent officer of the said port, for such unlading and delivery, contrary to the statute in such case made and provided; and it further avers, that the duties to which said goods and merchandise were liable, have not been paid, or secured to be paid, according to law; by reason of all which, and by force of the said statute, they have become forfeited. It is obvious from this summary statement, that the information rests on the fiftieth section of the collection act of March 2, 1799, c. 128; and to bring the case within that section, it was neither material, nor proper to allege, that the goods were of foreign growth or manufacture, or liable to the payment of duties, or that the duties due thereon had not been paid, or secured to be paid according to law; for no such qualifications are incorporated into the language of the section, or are implied by intendment of law. It was the policy of the legislature in order to suppress smuggling, to prohibit any goods, brought in any vessel, from any foreign port, whether of foreign or domestic growth, or manufacture, or whether liable to duties or free, from being unladen without a permit from the proper officer at the port of unlivery. It is generally unnecessary, and often perilous in informations upon revenue laws to make the allegations more broad, or more narrow, than the terms, in which the prohibition is expressed in the statutes themselves. And the present case is an example of the inconvenience of any deviation from the strictness of pleading.

The plea of the claimant alleges, that the duties. to which the goods and merchandise were liable. have been paid or secured to be paid according to law; and that they were not unladen or delivered within the United States, without a special license or permit from the collector of the United States, at the port or district where said goods and merchandise were first entered, viz. the district of Memphremagog; and that the goods have not become forfeited as alleged in the information. The replication alleges, that the duties, to which the goods were liable, had not been paid or secured to be paid according to law, and that the same were unladen and delivered within the United States, without a special license or permit from the collector of the customs at the port where the goods were entered; and that the same have become forfeited, as in the information is alleged; and it concludes with an issue to the country, which is joined by the claimant.

Independent of the objections to these pleadings on account of their inartificial structure and duplicity, the fact put in issue, as to the payment or security of the duties, is upon this information wholly immaterial. If the goods were unladen without a permit, they would be clearly forfeited under the statute, although the duties had been paid or secured; and on the other hand, although the duties may not have been paid or secured to be paid, yet if there has not been an unlading without a permit, the goods would be safe from the penalty of the statute. A verdict, therefore, finding the payment or non-payment of the duties, would be in every view of the information without any legal efficacy.

The other allegation of fact in the plea, upon which issue is taken in the replication, was doubtless intended as a traverse of that averment in the information, which constituted the very gist of the action; but in the terms in which it is expressed, it does not meet the point. The information charges, "that the said goods and merchandise being imported and brought as aforesaid, were afterwards, to wit, on the same day of January, unladen and delivered from the said vessel within the United States, to wit, at the port of Boston, in the district aforesaid, without a special license or permit from the collector, naval officer, or any other competent officer of the said port, for such unlading and delivery;" the traverse on the plea is, "that they were not unladen or delivered within the United States, without a special license or permit from the collector of the customs of the United States, at the port or district where said goods were first entered, viz. the district of Memphremagog." The substance of the charge in the information is, that the goods were unladen at Boston, without a permit from the collector, &c., of that port; the substance of the plea is, that the goods were not unladen without a permit from the collector of the port or district where they were first entered, to wit, the district of Memphremagog. The plea, therefore. contains neither a denial. nor a confession and avoidance of the matter in the information; but alleges matter totally dis-

tinct, (and even that by way of negative allegation) which, whether true or false, has nothing to do with the controversy between the parties; and the plea might be strictly true in point of fact, and yet the forfeiture charged in the information might have been incurred; for the goods might have been unladen from a vessel at Boston, without a permit from the collector of that port, notwithstanding they might have been first entered and the duties secured, and a permit granted in the district of Memphremagog. The issue joined on this allegation in the plea is, therefore, immaterial; and it has this additional vice, that as it neither traverses nor denies the material averments of the information, it must be deemed in law to admit them. Nicholson v. Simpson, 1 Strange, 297; Blake v. West, 1 Ld. Raym. 504. It follows that, as the plea and replication are in this view bad, the verdict founded on them cannot avail the defendant, even supposing, that the point of law raised in the bill of exceptions should be decided in his favor; for the court must pronounce upon the whole record; and if the plea and replication are bad and immaterial, and the information contains sufficient matter to warrant a judgment, (as this certainly does,) there must be a final judgment for the United States. If this had been a case originally depending in this court, a repleader might perhaps have been proper to be awarded; for although in general, a repleader is not grantable in favor of the person, who made the first fault in pleading, nor where the court can give judgment upon the whole record; yet if it appear, that substantial justice will not otherwise be done, the court might award it. But this court sits in this cause as a court of error, and although the practice was anciently otherwise, a repleader is now never awarded by a court of error. Holbage v. Bennet, 2 Keb. 769, 789, 825; Bennet v. Holbech, 2 Saund. 317; Crosse v. Bilson, 6 Mod. 102.

To avoid the effect of these principles, and to save the defendant from the perils of mispleading, it is argued, that in the allegation of the information, that the goods "were unladen and delivered from the said vessel within the United States, to wit, at the port of Boston, in said district aforesaid," the words under the videlicet may be rejected as surplusage, so as not to tie up the proof to an unlading at Boston; and in like manner the words under the videlicet in the plea, ("viz. the district of Memphremagog,") may be rejected as surplusage, so as not to tie up the proof to the district of Memphremagog; and then the issue, though informal, will yet meet the point of the information. This argument proceeds upon the supposition, that the matters stated under the videlicet are immaterial; and that whatever is immaterial may be rejected as surplusage. But it is by no means generally true, that whatever is immaterial may be rejected as surplusage. If the immaterial matter constitute a part of a material averment, so that the whole cannot be struck out without destroying the right of action, or defence of the party, there the immaterial matter cannot be rejected as surplusage; but may be traversed in pleading, and must be proved as laid, though the averment be more particular than it need have been. 2 Saund. 206, note 27; Williamson v. Allison, 2 East, 446; Bristow v. Wright, Doug. 665; Savage v. Smith, 2 W. Bl. 1101. The doctrine has in some cases been pressed somewhat farther; and a distinction taken between immaterial and impertinent averments, that the latter need not be proved, though the former must, because relative to the point in question. Doug. 665; 2 W. Bl. 1101; 2 East, 446. The true rule seems to be, that whenever the whole allegation may be struck out without affecting the legal right set up by the party, it is impertinent, and may be rejected as surplusage. But if the immaterial matter be sensible in the place, where it occurs, and constitute a part of a material allegation, then it cannot be rejected; but it may be traversed, and must be proved, if put in issue. Nor is it true, as urged in the argument, that matter stated under a videlicet is mere surplusage. It is sometimes used to explain, what goes before it; and if the explanation be consistent with the preceding matter, it is traversable. So it is sometimes used to restrain the generality of the former words, where they are not express, and special, and then it is traversable. And whenever a videlicet contains matter, which is material, and necessary to be alleged, it is considered as a direct and positive averment, and as such traversable, in the same manner, as if no videlicet had been inserted. Skinner v. Andrews, 1 Saund. 170; Stukeley v. Butler, Hob. 175; Hayman v. Rogers, 1 Strange. 232; Bissex v. Bissex, 3 Burrows, 1729; Knight v. Preston, 2 Wils. 332; Grimwood v. Barrit, 6 Term R. 460; Dakin's Case, 2 Saund. 291, note 1; Rex v. Stevens, 5 East, 254. If the matter alleged under the videlicet in the information or plea be tried by these rules, it will not be easy to reject it as surplusage. It is evidently explanatory of the generality of the preceding words, and consistent and sensible in the place, where it occurs, and therefore just as much a part of the preceding allegation, as if it had been stated without a videlicet. The matter, also, under the videlicet in the information, was material, and pertinent to be alleged. The fiftieth section of the collection act, on which this information is founded, manifestly contemplates, that the goods are unladen within some port, or place, of a district of the United States, without a permit from the collector of the particular port or district, where they are unladen. If the unlading be within the maritime limits of the United States, before an arrival at any port, the case seems properly to fall within the twenty-seventh section, and not within the fiftieth section of the act. The Industry [Case No. 7,028]. To bring a case within the

purview of the fiftieth section, it is, therefore, necessary to allege in the information, that the goods were unladen within some port, or other place within a collection district, without a permit from the collector of such district. I do not say, that it is necessary to specify the particular port, or district by its legal name; for it would be sufficient to state it to be unknown to the attorney of the United States. But it must judicially appear in the information, to be an unlading within some port, or district; and if the United States should choose to specify the particular port, or district, they are bound by the specification. In the present information, the matter under the videlicet would, independent of this ground, have been material; because it is referred to in the subsequent part of the allegation. The unlading is alleged to be without a permit from the collector of the same port, and if the words under the videlicet were struck out, there would be a material defect in the information. For even supposing that the words, "the said port," could then be referred to the introductory part, so as to mean the port of Boston, still, as a collector has no authority to grant a permit, nor is there any necessity of obtaining one from him, except for an unlading within his district, there would be nothing remaining in the information to show, that the unlading was within the district of Boston and Charlestown, so as to render a permit from him necessary, or to make its non-existence a cause of forfeiture. The matter also alleged under the videlicet in the plea, (even supposing that the plea, as containing a negative allegation of new matter, could be sustained) is open to many of the observations, which have been already made; and upon other distinct grounds, must be held material. It is, however, unnecessary to review these grounds, because, for the reasons already stated, the plea has a fatal defect.

The insufficiencies of the pleadings, render it unnecessary to consider the point of law intended to be raised by the bill of exceptions. I say, intended to be raised; for the bill of exceptions is so inartificially drawn, that it is very doubtful, if it presents any distinct question of law. The bill contains a very unnecessary and prolix recital of all the evidence given on the trial, in the very language of the depositions and witnesses; the greater part of which evidence is totally impertinent to the point of law. And the district attorney then prays the court to instruct the jury, among other things, that a forfeiture of the merchandise must, therefore, "under all the circumstances of the case," be considered as resulting of course. What those circumstances were was matter of fact for the consideration of the jury, and did not properly fall within the province of the court to ascertain, or decide. It is very clear, therefore, that the court was not bound to give the instruction in the manner, in which it was asked. Smith v. Carrington, 4 Cranch [8 U. S.]

62. The proper course would have been, if the facts, on which the point of law arose, were not in dispute, to have stated them shortly and succinctly, as facts in proof, and prayed the court to instruct the jury on the law arising out of them; and if the facts were in dispute, to have prayed the court to instruct the jury as to the law, if they should find the facts as the party alleged them. I regret extremely, that I have been compelled, by a sense of duty, to take notice of the irregularities in the pleadings and exceptions in this case, which, I am quite sure, were simply owing to the unavoidable haste, in which they were prepared by the learned counsel. Nothing could have been a more unwelcome and irksome task to me. Irregularity in pleading tends greatly to increase the embarrassments, as well as the labors, of the court. It also very frequently commits the substantial interests of the parties, and defeats the purposes of justice. It is a melancholy reflection, that much of the time of courts of justice is employed in ingenious devices, and laborious technical study, to disentangle the merits of causes from the difficulties, in which they are involved by the parties.

I recommend to the counsel, in this case, to enter into an agreement to set aside the judgment and all the pleadings, and to plead anew, so that the real merits of the cause may be tried at the bar of this court. If such an agreement be not entered into, for the reasons which have already been mentioned, I shall feel myself compelled to pronounce a reversal of the judgment of the district court, and to award a final judgment in favor of the United States.

Upon this intimation, the counsel agreed to set aside the pleadings and judgment, and to plead anew.