[ *458 ]              *HOGAN & MILN *vs.* SHORB.

Where goods belonging to his *principal*, were sold by a *factor* without knowledge of the owner-
ship on the part of the purchaser, the latter, in an action on the contract by the principal, for
the price of the goods, was held entitled to *set-off* a demand against the factor, although the
sale was a *cash sale*, and the purchaser, when he obtained the goods, did not intend to abide
by his contract, but purposed to set-off his demand against the factor.

It was further held, that the purchaser in this case was entitled to his set-off, although it consist-
ed of a note of the factor not due until forty-five days after the sale, the principal not having
commenced his suit until *after* the maturity of the note.

Whether if the factor or the principal, on discovering that the purchaser did not intend to pay
cash, might have *disaffirmed* the contract and brought *trover* for the goods, *quere.*

ERROR from the New-York C. P.  *Shorb* sued *Hogan & Miln* in assump-
sit for *goods sold and delivered*, and on the trial, claimed to recover the price
of 50 bags of pimento or allspice.  The plaintiff lived in Baltimore, and the
defendants in New-York.  The sale was made by *John B. C. Morris*, who
also resided in New-York.  *Morris* testified that, *as the agent of the plain-
tiff*, he sold the goods to the defendants about the 27th April, 1838, for
$304,20.  But the name of the principal was not disclosed.  The sale was
for *cash*, or payable in from two to six days, which was deemed a *cash sale.*
Morris had himself stopped payment 20 days before the sale, and that fact
was notorious.  At the time of the sale the defendants held Morris' note,
given to them for $618,92, but which would not become due until the 11th
June following.  Morris first sent a boy for the money immediately after the
sale, but it was not paid.  He then called himself on two occasions, but the
defendants said they were *short of funds*, and wanted him to wait a little.
About fifteen or twenty days after the sale, Morris called a *third* time, and
the defendants then told him they thought he ought to let it be, *and let it go
against the note that was coming due.*  Morris answered that *he had no right
to do that—that the goods did not belong to him*, and he must
[ *459 ]     *get the money.  *He told them that the owner lived in Balti-
more;* and he thinks he gave the owner's name, but of that he
could not speak with any certainty.  Morris further testified that he was a
*commission merchant*, and such was his sign—and that if the defendants did
not know it, every body else did.  He had no doubt *that the defendants*

*knew he had stopped payment* before the sale. Evidence was given, tending to show that the defendants made the purchase *with the intent to set-off the note, instead of paying cash, according to the contract.*

*Stanton* a produce broker, made the sale for Morris. He testified that *he did not know that the plaintiff was the owner*, and that *he sold the property to the defendant as belonging to Morris.* He further testified that he did not know that Morris was a commission merchant, and did not consider him as such, and Morris always dealt with him on his own account. The suit was not commenced until November, 1838, before which time the note had become due. The defendants gave the note in evidence, and claimed it as a set-off.

The judge charged the jury, first, that if the defendants treated with Morris as the principal or owner of the pimento, and knew him only as such owner at the time of the sale, although it was a sale for cash, the plaintiff was bound by the sale as one made by Morris in his own right, and the set-off could be allowed. Second, that a fraudulent purchaser acquires no title against the vendor; and if the defendants did not purchase the pimento of Morris with an honest intent to pay cash as agreed, but with the disguised and fraudulent object of obtaining possession of the property merely to apply it to the payment of the note, suppressing the object from Morris, then the set off could not be allowed, if the plaintiff was the true owner of the article sold, although he was not known to the defendants as such owner at the time when they purchased. To the second branch of the charge, the defendants excepted. The jury found a verdict for the plaintiff for the price of the goods; and judgment having been rendered in his favor, the defendants now bring error.

*S. Sherwood*, for plaintiffs in error. [ *460 ]

*H. F. Clark*, for defendants in error.

BRONSON, J. If the defendants were contending with *Morris*, I do not see how the set-off could be resisted. By an absolute delivery of the goods, he waived the condition, on which he might otherwise have insisted, of having present payment. *Lupin* v. *Marie*, 6 *Wendell*, 77. Though if the delivery had been procured by fraud on the part of the vendees, the title would not have passed. *Earl of Bristol* v. *Wilsmore*, 1 *Barn. & Cress.* 514. *Wilmarth* v. *Mountford*, 4 *Wash. C. C. R.* 79. It is not necessary that the sale should, in express terms, be for cash. If the vendor do not agree to sell on credit, he is not obliged to part with his goods until the price is paid. But this condition, whether express or implied, will be waived by an absolute delivery, if it was not brought about by an artifice on the part of the vendee.

It is said that the title did not pass as against Morris—considering him as the owner of the goods—on account of the fraudulent 'purpose of the vendees to set-off their note, instead of paying cash according to the agreement. If this can properly be characterized as a fraudulent transaction—*Chapman* v. *Lathrop*, 6 *Cowen*, 110 ; *Eland* v. *Karr*, 1 *East*, 375 ; *Downer* v. *Eggleston*, 15 *Wendell*, 51—it is too late to set up such an allegation after affirming the sale by repeated applications for payment, and bringing an action to recover the price of the goods.   In *Chapman* v. *Lathrop* the vendors attempted to disaffirm the sale, and after a demand brought *trover* to recover the goods.   But they had waited a fortnight after the delivery before the demand was made, and the action failed.   It may, perhaps, be an open question whether the vendor, immediately after the delivery and when he first discovers that the vendee does not intend to abide by his contract to pay cash, may not disaffirm the sale and bring trover for the goods, if they still remain in the hands of the vendee.

[ *461 ]      But Morris has never attempted to recall the goods ; and *what-ever may be the fraud, if the goods are actually delivered in pursuance of a contract of sale, the bargain cannot be so absolutely void but the vendor may elect to affirm it.   An action for the price of the goods is a plain affirmance of the sale ; and any considerable delay in requiring a return of the goods after discovering the fraud, would, I think, work the same consequence.

If Morris had brought the action, the set-off could not have been resisted, how stands the case with the plaintiff ?   When the sale is made by a factor, an action for the price may always be brought by the principal, as well as by the agent ; and the rule is the same, although the agent act under a *del credere* commission.   But the principal, by suing in his own name, cannot defeat the existing equities between the vendee and the factor, unless they are chargeable with collusion, or there has been some act on the part of the vendee which operates as a fraud upon the owner of the property.   One of the earliest reported cases on this question is *Raybone* v. *Williams*, 7 *T. R.* 356, *note (a.)* where the rule is thus laid down by Lord Mansfield : " Where a factor dealing for a principal, but concealing that principal, delivers goods in his own name, the person contracting with him has a right to consider him to all intents and purposes as the principal : and though the real principal may appear and bring an action upon that contract against the purchaser of the goods, yet that purchaser may set-off any claim he may have against the factor in answer to the demand of the principal.   This has been long settled."   This case was followed in *George* v. *Clagett*, 7 *T. R.* 355 ; which is considered a leading case, 2 *Smith. Lead. Cas.* 77, and has, I believe, never been questioned.   The same principle applies where one of several partners is permitted to act, and hold himself out to the world as though he

were the only person interested in the business. He cannot, by uniting the name of the sleeping partners in a suit against a third person, defeat a set-off which would have been available had he sued alone. *Stracy and others* v. *Deey*, 7 *T. R.* 361, note (*c.*) See also *Coats* v. *Lewes*, 444. *Blackburn* v. *Scholes*, 2 *Campb.* 341. *Carr* v. [ *462 ] *Hinchliff*, 4 *Barn. & Cress.* 547. In *Baring* v. *Corrie*, 2 *Barn. & Ald.* 137, the sale was made by a *broker*, and in an action by the principal, the vendees were not allowed their debt against the agent. But the case turned principally on the distinction between a *factor*, who is usually entrusted with the goods and sells in his own name, and a *broker*, who is not usually entrusted with the goods, and ought only to sell in the name of his principal : and stress was laid on the fact, that the plaintiffs had not enabled the broker to impose on third persons, by entrusting him either with the possession of the goods, or the muniments of their title.

When the name of the principal is disclosed at the time of the sale, the vendee has no right to set up any equities between himself and the factor to defeat the action of the owner ; and the same consequence will, I think, follow, if the vendee knew, or had good reason to believe, he was dealing with the agent of another, although the name of the principal was not disclosed. *Maanss* v. *Henderson*. 1 *East*, 335. 2 *Smith. Lead. Cas.* 79, *note to George* v. *Clagett*. But a mere general knowledge that the person selling the goods is a factor, if he also carry on business on his own account, will not be sufficient to charge the vendee with notice. *Moore* v. *Clementson*, 2 *Campb.* 22. He must know or have good reason to believe that the vendor is acting as the agent of some other person in that particular transaction.

In this case, the jury would have been authorized to find, 1. That the plaintiff was the owner of the goods ; 2. That Morris sold as though he were the owner, without disclosing the name of his principal ; 3. That Morris was a commission merchant, also carrying on business on his own account ; 4. That he had a few days before stopped payment, and that this fact, as well as the general nature of his business, was known to the defendants at the time of the sale ; and 5. That although the sale was for cash, the defendants intended to pay for the goods by the note of Morris. Would any or all of these facts authorize the jury to find that the defendants knew or had good reason to believe that Morris, in this particular transaction, was acting as the *agent for some other person ? I [ *463 ] think not. The fact that Morris was a commission merchant, had little or no tendency to prove notice, because he was also a trader on his own account. The fact that he had stopped payment proves nothing, because, after the happening of that event, he would be as likely to sell his own goods as he would the goods which a third person had previously entrusted to him. And the fact that the defendants intended to set off the note, rather tends

to show that they believed Morris was the principal, for otherwise they could hardly hope to accomplish their object. The judge would, I think, have been well warranted in telling the jury that the defendants were entitled to a verdict. It will not do in such cases to *guess* that the vendee had notice. It must appear from the nature of the transaction, or from something which transpired before the contract was completed, that the vendee had good reason to believe he was dealing with an agent. In a commercial community, no rule short of this will afford sufficient protection to purchasers.

The law was correctly stated in the first branch of the charge, that if the defendants treated with Morris as the principal, and knew him only as owner at the time of the sale, the plaintiff was bound, and the set off could be allowed. But the defendants were deprived of the benefit of this instruction, by that which immediately followed. In the second branch of the charge, the judge told the jury that a fraudulent purchaser acquires no title against the vendor ; and he, in effect, instructed them, that the defendants were such fraudulent purchasers, and that the set off could not be allowed, if the jury believed that the defendants purchased the goods with a fraudulent intent to pay Morris by his own note, instead of paying cash according to the agreement. But the plaintiff does not seek to disaffirm the sale and reclaim the goods on the ground of fraud. By bringing this action for the price, he affirms the sale. His language to the defendants is, " although you intended to defraud Morris by not performing your contract to pay cash, I waive that objection ; I elect to consider the sale valid, and you [ *464 ] must pay me the price." And then the question arises, *whether the defendants are not entitled to their set off; and that question depends on the inquiry whether they dealt with Morris as principal, without notice that he was acting for another.

I was inclined, on the argument, to think the judgment might be supported on the ground that the note had not become due at the time the defendants were informed, two or three weeks after the sale, that Morris was not the owner of the goods. But the case was not put upon that ground by the court below. It was treated as a question of fraud. And besides, further reflection has led me to doubt the correctness of my first impression. Either Morris, as the vendor, or the plaintiff as owner, might have defeated the set off by suing for the price before the note fell due. But that was not done ; and having waited until the note became the proper subject of a set off, the defendants have got rid of that difficulty. The only question now is, whether they can set off a debt which they held at the time of the sale, and which was due at the time the suit was commenced. The principal may no doubt come in at any time after the sale, and arrest all further dealing between his agent and the vendee ; and if after notice from the principal, the vendee pays the agent, or acquires a demand against him, he cannot set that up as

a defence in an action by the owner of the goods. But notice after the sale will not defeat any equity already existing between the vendee and the agent. The defendants had such an equity. They bought the goods for the very purpose of obtaining payment of their debt against Morris ; and the right to set off the note, though inchoate at the time of sale, became perfect before the suit was commenced. Although the plaintiff might have succeeded by suing at an earlier day, he has suffered that advantage to slip, and the case now stands as it would have done had the note been due at the time of the sale.

The Chief Justice concurs in the result of this opinion on the sole ground that the case was improperly put to the jury as a question of fraud.

Judgment reversed.