STANLEY MANLY BOYS' CLOTHES INCORPORATED v. H. K. HICKEY.

### No. 3926.  Decided March 12, 1924.

### (259 S. W., 160.).

**1.—Contract—Breach—Damages—Duty to Prevent.**

Where the seller refuses to perform his contract by delivery of the goods, the general rule as to damages is, that the purchaser can recover the difference between the agreed price and the cost of purchasing like goods in the market at the time of the breach of his contract by the seller,—it being his duty to mitigate the damages by such substitution.  (P. 484).

**2.—Same—Sale on Credit.**

Where one who has contracted to sell goods on credit refuses to deliver them unless paid cash instead, it is questioned whether the rule should require the purchaser to deal again for cash with the one who had broken his contract to sell on credit (Hickey v. Perkins Dry Goods Co., 229 S. W., 951, criticised).  At least he would not be required, if he had not the cash to make such payment, to borrow the money to do so, unless able to borrow without embarrassment, or mortgaging his property, or affecting his financial rating.  And the burden of showing that he could thus have mitigated the damages would rest on the seller who had broken the contract. (Pp. 483-488).

Question certified from the Court of Civil Appeals for the First District, in an appeal from Leon County.

*Joe H. Seale,* for appellant.

Where a seller breaches a contract on account of the dating, but offers to sell at the same price for cash or by paying for the delivered goods, the measure of damages is the interest upon the undelivered purchase for the period of the credit.  Hickey v. Perkins Dry Goods Co., 229 S. W., 931; Lawrence v. Porter, 63 Fed., 62.

*M. L. Bennett* and *W. D. Lacey,* for appellee.

If a seller breaches a contract, but offers to sell to the buyer at the same price provided cash be paid for the remainder of the goods, or be paid for the goods already delivered, the measure of damages is the interest upon the money to be paid, provided the buyer has such money, but if the buyer does not have such moneys at his command, then the damages, provided the buyer is solvent, is the gain in price of the goods, between the date of purchase and the date for delivery.  Hickey v. Perkins Dry Goods Co., 229 S. W., 951; 17 Corpus Juris, pp. 848, 849, 850.

MR. JUDGE POWELL delivered the opinion of the commission of appeals, section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals for the First District:

"The question hereinafter stated, which we deem it advisable to certify for your decision, arises upon a statement of the facts appearing from the record of this cause in this court, as follows:

"The appellant in this court, as plaintiff below, sued the appellee here, as defendant below, upon an account for goods and merchandise sold and delivered by it to appellee, in the amount of $364.50. The appellee, after admitting receipt of the goods in the amount so declared upon and the fact that they had not been paid for, by cross-action reconvened for damages alleging that appellant had, on May 23, 1919, contracted to sell appellee a bill of goods amounting in all to the sum of $1201.50, to be delivered to him on August 1, 1919, or within reasonable time thereafter, with the understanding that he was to pay for the same on November 1, 1919; that after having delivered to him the $364.50 worth of the goods, appellant breached the contract on September 15, 1919, and refused to deliver to appellee the remaining $837.00 worth of the clothing called for in the contract, unless he would then pay cash for this remaining balance and also pay for the $364.50 worth he had already received; that at that time he had been unable to meet either of these requirements, but could have paid for the entire bill on November 1, 1919,. as agreed; that the price of the goods on the open market was much higher on September 15th, than on May 23rd, and that he suffered special damages by the refusal of the appellant to deliver to him the balance of $837.00 worth of the goods as stipulated.

"The fact issues embodying these answering averments of appellee in cross-action, under testimony by himself to the effect that 'At the time plaintiff breached the contract, I had a stock of merchandise in my store which was worth about $12,000.00, and I had a tract of land left by my father that was worth about $5,000.00; I did not have the money to pay for the goods already delivered, neither did I have the money to pay for the undelivered clothing, and I did not try to borrow the money,' were submitted to a jury and answered favorably to him; the trial court, in response to the verdict, entered judgment in set-off in his behalf for damages for the failure of the appellant to deliver the balance due of the goods as per contract, on the basis of the difference in market value of such balance of the goods on May 23, 1919, the date of the contract, and on September 15, 1919, the date of the breach by appellant.

"In these circumstances we propound the following question:

"Under the facts so alleged and testified to by the appellee, all of which must in the state of the evidence be taken in this court as true, was he entitled, as the measure of his damages, on account of appellant's breach of its contract with him to deliver the balance of the

goods called for, to recover the difference between the contract price of the undelivered portion of the goods he bought, and their value at the time of the seller's breach of the agreement to deliver them to him? In this connection, we call attention to the case of Hickey v. Perkins Dry Goods Company, 229 S. W., 951, decided by this court.''

In an action involving a cross-action for damages of the kind we have here, it is well settled that:
''Where a party is entitled to the benefit of a contract and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it, and he can charge the delinquent with such damages only as with reasonable endeavors and expense he could not prevent. Wicker v. Hoppock, 6 Wall., 94 (73 U. S., 18 L. Ed., 752) ; Miller v. Mariner's Church, 7 Greenl. (Me.), 56; Russell v. Butterfield, 21 Wend., 304; Ketchell v. Burns, 24 Wend., 457; U. S. v. Burnham, 1 Mason, 57; Taylor v. Read, 4 Paige, 571.'' Warren v. Stoddart, 105 U. S., 224, 26 Law Ed., 1117.''

In line with this principle, it was the duty of Hickey to go upon the open market and buy these goods if he could do so. The jury and trial court awarded him as damages the additional amount these goods would have cost him in the open market over and above his contract price thereon with appellant. It is practically the universal rule that such a measure of damages is correct. For instance, in the case of Deere v. Lewis, 51 Ill., 254, the Supreme Court of that State says:

''The rule adopted by this court, proceeds upon the ground that, if the vendor fails to deliver, the vendee can go into the market and purchase the same goods or chattels to supply his demands, and if he has to pay a higher price, he is injured to that extent by the breach of the contract, and may compel the vendor to make it good, by a recovery of that sum as damages.''

But, appellant contends that appellee was not entitled to this measure of damages because it was willing, after breaching its contract to sell Hickey on credit, to sell him the goods at contract price for cash; that it was the duty of Hickey, in order to mitigate the company's damages arising from its breach of its own contract, to buy from it for cash; and, if he did not have the cash, he must borrow it if possible.

The Court of Civil Appeals, in its certificate herein, refers to its own former decision in the case of Hickey v. Perkins Dry Goods Company, 229 S. W., 951. In that case, Chief Justice Pleasants held that the vendee must buy for cash from the vendor who had breached his original contract with that very vendee, if such vendee had the cash available for such purchase at the time; that, his measure of damages would then be interest on this cash from its premature payment to the time it was to be paid under the terms of the original contract. The Court of Civil Appeals, in making that decision, relied largely

upon the opinion of Justice Lurton, then on the Circuit Court of Appeals, in the case of Lawrence v. Porter, 11 C. C. A., 27, 63 Fed., 62, 26 L. R. A., 167. Judge Lurton's opinion supports Judge Pleasants', as do the authorities cited. But, Judge Lurton, in his case, as well as Judge Pleasants, in his case, expressly declined to pass upon the duty of the vendee to buy for cash when he has no cash and can obtain it, if at all, only by borrowing it. The New York court also expressly declined to pass upon such a question.

In the case at bar, Hickey testified that he had no cash to buy these goods for cash from appellant; that he did not try to borrow the money. The jury found his statements to be true. Therefore, the appellant in this case is asking the courts to go farther than Judge Lurton or any of the other judges in the cases cited by Judge Pleasants, in the opinion aforesaid, have gone.

For this reason, it does not become necessary for us to pass upon the correctness of the rule announced by Judge Pleasants in the case of Hickey v. Perkins Dry Goods Company, supra. We do not do so. That case did not reach the Supreme Court. But, we will say that we entertain very grave doubt as to its correctness. As Judge Lurton says, ''the law imposes no damages by way of punishment for a breach of contract of sale.'' This learned judge was pleading for the party breaching his contract and asking that he be not punished. That he was correct, we have no doubt. Mere punishment should rarely, if ever, be the motive for allowing damages at law. But, we must not forget the party who was the victim of the breach. He should likewise be not punished. He certainly is entitled to at least as much consideration as the one who has broken his contract. It has never been the policy of the law to humiliate any one. When a vendor agrees to sell on credit and then changes to a cash basis, it can mean but one thing, and that is a lack of confidence on the part of the vendor in the vendee. Surely, after that, it is humiliating to such a vendee to be required to again contract on any basis with this same vendor. We doubt if any man should be required to contract a second time with one who has without cause breached a prior contract with him. A man's nature is such that he almost instinctively rebels against it. We drop this suggestion and refer to other objections against the rule commented upon by Judge Lurton and others.

In the very much later case of Hirsch v. Georgia Iron & Coal Co., 95 C. C. A., 76, 169 Fed., 578, Judge Lurton, speaking of the general rule requiring one to mitigate damages, said that such rule ''must be held within reasonable bounds. It is a rule which has never been regarded as requiring one to yield to a wrongful demand that he may thereby save the wrongdoer from the legal consequences of his own error.'' We have read the authorities in Shepard's Federal Citations referring to the opinion of Judge Lurton in the case of Lawrence v. Porter, supra. It is true that none of the later cases have ever over-

ruled this earlier decision, but they do seem to us to indicate a slight tendency to break away from the rule requiring a vendee to deal a second time with the vendor who has broken a prior contract with him. Some of these more recent Federal cases refer to such a vendor rather critically as a "defaulting contractor" and intimate that it is rather exacting to require a man to again deal with such a person. And, while it is true that the rule laid down by Judge Lurton has not yet been' overruled, it is also true that the courts have steadily, and without any exception, refused to extend or broaden the rule one bit. The very question in the case at bar seems not to have been before these courts, but other efforts to extend the rule. have been uniformly rejected.

But, even if we concede, for the purposes of this decision, that Hickey could have been required, under' the law, to buy for cash from this original vendor, we would still not reach the facts of this case. Hickey had no cash, and, therefore, the decisions upon that point do not cover the instant case. And, as already stated, none of the judges aforesaid have ever gone so far as to hold that the vendee must go a step further and borrow money in order to secure the cash necessary to a mitigation of the damages about to be suffered by one who has wronged him. Counsel for appellant cite no authority which so holds or even hints at it. We have been unable to find an authority which so holds.

As heretofore remarked by us, one must reasonably exert himself to mitigate damages. But, that brings us to the question of whether or not it is a reasonable exertion to ask a man to borrow money, perhaps mortgage his estate and endanger it, and certainly affect his credit, just in order to save the party who has wronged him. We think not. We feel that it is asking too much and is, therefore, unreasonable. In other words, that the limit has been reached, in any event, when some of the courts require a party to use his available cash and buy for cash from one who has breached a contract with him.

The duty to mitigate damages to favor one who has so breached his contract with you does not require an outlay of anything more than slight expense or reasonable effort or exertion. No great expense or unusual or burdensome exertion or effort is required. We think the assumption of a debt to some third person is an unusual and unreasonable effort. Many people abhor debt under any circumstances. Numbers of our most substantial citizens will not incur it at all. The assumption of it is attended by more or less embarrassment and hesitation to any right-thinking man. It affects credit and financial rating almost the instant it occurs. Especially is this true of the rating of one in the mercantile business. A debt based upon security necessarily involves danger of loss of the property so mortgaged. A debt without security has a tendency to establish obligations which

may, and generally do, prove embarassing to a lesser or greater degree. In short, we think it is enough for a man to be called upon to borrow money to avoid a breach of his own contract. It is too much to require him to borrow money solely in order that he may mitigate damages which would otherwise accrue to one who has, without cause, breached his contract with him.

The Supreme Court of Iowa held it was unreasonable to require one to pay cash when he had bought on credit. It seems much more unreasonable to us to require one to borrow in order that he might make such a cash payment. We quote as follows from the opinion just referred to in the case of Louis Cook Mfg. Co. v. Randall & Dickey, 62 Iowa, 244, 17 S. W., 507.

"The object of defendants in making the contract for time was to be able to deal in the goods upon credit. Now, to say that credit is refused, when the contract provides that it shall be given, the defendants being required to purchase for cash, is to deprive them of the very benefits the contract contemplates they shall receive. It is true, as is said by counsel for plaintiff, that defendants were required to do 'all they reasonably could do to prevent damages.' But to require them to pay cash when they had contracted for credit, is not within the bounds of reason. The condition as to credit was an important and essential provision of the contract. The law will not presume that defendants could have paid cash for the goods, and it surely did not require them to do what they are not shown to have been able to do."

But, there is still another reason why this question should be answered in the affirmative. Hickey had established the usual and ordinary measure of damages. But, the company answers this cross-action and says he could have bought for cash from it at the old contract price and that if he had no cash, he could have borrowed it. From the facts given us in the certificate, the only proof on borrowing money was a statement by Hickey that he did not try to borrow it. Counsel for the company had the burden of showing that he could have borrowed money at that time if he had made the effort to do so. This burden appears not to have been discharged. Therefore, even if one could be required to borrow money to mitigate damages, such defense would fail when it was not established by evidence. As stated in the Iowa case just quoted, the law does not require people to do "what they are not shown to have been able to do." Again, in the case of Campfield v. Sauer, 111 C. C. A., 18, 38 L. R. A. (U. S.) 837, 189 Fed., 580, the Circuit Court of Appeals of the United States says: "The burden of proving that the damages alleged to have been sustained by the defendant could have been prevented or mitigated by his action rested upon the plaintiffs, as the parties charged with responsibility for breach of the contract. Lillard v. Ky. Dist. & Warehouse Co. (Sixth Circuit) 134 Fed., 168, 178, 67 C. C. A., 74; Ky.

Dist. & Warehouse Co. v. Lillard (Sixth Circuit 160 Fed., 34, 40, 41, 87 C. C. A., 190; Howard Supply Co. v. Wells (Sixth Circuit) 176 Fed., 512, 516, 100 C. C. A., 70.''

The Court of Civil Appeals accompanied its question with briefs by counsel for each of the parties. The attorneys for the company contend that it was the duty of Hickey to buy from it for cash; that if he did not have the cash, he could and should have borrowed it; that he did not show that he could not have borrowed the money. These attorneys state that Hickey had a net worth of some $14,000.00 and surely could have borrowed the required amount. It seems to us to be establishing a dangerous rule to say that a vendor can breach his contract for credit with a vendee and then set back and demand cash and be relieved of all consequential damages unless the victim of the breach can go into court and assume all the burden of proving he neither had the cash nor could get it in any way. We cannot believe a law should practically excuse the one breaching his contract and fix all the burden upon the shoulders of the innocent party. If so, vendors could with impunity breach their contracts of this nature almost daily. Breaches of contracts should not be encouraged or made easy. In fact, the law should make people realize that they must suffer to at least a certain extent when they breach their contracts. The law should encourage execution of contracts. It is nothing more than fair dealing between man and man for one party to do for the other what he has agreed to do. The Supreme Court of Illinois, in the case of Deere v. Lewis, supra, says: ''The law never permits a party to willfully break his solemn engagements, and to trifle with and disappoint with impunity those with whom he deals.''

In the case at bar, if Hickey really had all the net worth counsel for the company asserts he had, then before the company breached its contract, it could and should have so ascertained. Being so advised, it had no earthly excuse for breaching its contract as it did. Why should this company refuse credit which it had already agreed to extend and then come into court and insist that some third party should and would have extended a similar credit?

For the reasons discussed, or either of them, we are clearly of the view that the question certified should be answered in the affirmative. We so recommend.

The opinion of the Commission of Appeals answering certified question is adopted and ordered certified to the Court of Civil Appeals.

C. M. CURETON,
Chief Justice.