**T. H. HENDERSON, Appellant,**

v.

**OTTO GOEDECKE, INC., Appellee.**

No. 364.

Court of Civil Appeals of Texas.

Tyler.

June 20, 1968.

Rehearing Denied July 18, 1968.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for appellant.

Key, Carr, Carr & Clark, Donald M. Hunt, Lubbock, for appellee.

DUNAGAN, Chief Justice.

This is a suit for breach of contract. Otto Goedecke, Inc., appellee, filed suit against T. H. Henderson, appellant, based upon the alleged failure of appellant to fully perform three confirmations or contracts for the sale of cotton by appellant to appellee. Appellee sought to recover the differences between the contract price of the undelivered cotton and the price which is paid for cotton to replace that undelivered under the contracts.

This is the second trial of this case, the case having previously been reversed and remanded by the Amarillo Court of Civil Appeals for new trial. Goedecke v. Henderson, 388 S.W.2d 728 (1965, writ ref., n. r. e.).

The case was re-tried before a jury, submitted on Special Issues, and a judgment rendered for appellee in the amount of $8,481.19. From this judgment, the appellant brings this appeal.

In December, 1960, appellant contacted Allen & Company of Houston, Texas, who are cotton brokers, about selling certain cotton for him. Appellant was to pay Allen & Company for their services as brokers a commission of 50¢ per bale. Allen & Company first confirmed with appellant the amount, kind, and price of the cotton which he had for sale, after which Allen & Company contracted to sell 1300 bales of appellant's cotton to appellee and issued three confirmations or contracts showing the

terms. Appellant dealt directly with Allen & Company and never had any conversations or dealings with appellee about the terms.

The confirmations constituting the contracts, upon which this litigation is founded, are referred to in the evidence as confirmations 1450, 1462 and 1463. Under confirmation 1450, appellant was required to deliver 800 bales of cotton, but he failed to deliver 64 of the bales. He also failed to deliver 182 bales of cotton of 250 bales which he sold under confirmation 1462; also he failed to deliver 105 bales of cotton of the 250 bales required under confirmation 1463. The total number of bales of cotton which appellant failed to deliver was 345 bales.

The last deliveries which appellant made under the contracts were on February 13, 1961. After the deliveries stopped, appellee contacted the appellant through its representative, David Scherz. Scherz called appellant in March and in April, 1961, and discussed the shortages and indicated that appellee still expected delivery from him. Scherz wrote appellant a letter dated March 24, 1961, and followed that one with a second letter of March 29, 1961. In the conversations, as well as the letters, Scherz made clear that appellee still expected delivery and expected reimbursement for certain weight penalties and compress charges which appellee was required to pay, but which was the obligation of appellant. Appellant did not reply to such letters.

On April 18, 1961, Scherz again called appellant asking for reply as to when he intended to fulfill his contracts. After no response from appellant, appellee, through its president and Scherz, prepared a telegram on April 25, 1961, which again requested payment of $261.59 for the penalties, compress charges and other charges due under the contracts, and delivery of the remainder of the cotton and a prompt reply.

No reply was received to such telegram and on May 1, 1961, a second telegram was sent to appellant advising him that his failure to respond forced appellee to go into the market and buy the cotton in for his account. The telegram also advised that the appellant would be responsible for both differences and claims and that the matter was being turned over to appellee's attorneys. Appellant's only written reply to anyone in connection with why he did not fulfill his contract was on March 10, 1961, to Allen & Company, explaining that he was short on his delivery because he had been in ill health.

After May 1, 1961, Scherz began to look for cotton of the same type to replace the shortages on appellant's contracts. Scherz searched for over a month, but cotton of the same type and kind required by the contract or any substantially similar cotton was not available. Therefore, cotton as close in type and quality as was available was finally obtained by appellee to replace 345 bales which appellant was short by purchases made on June 1, June 12, June 16 and June 22, 1961, respectively. The cost of such cotton adjusted to Lubbock, Texas, was $51,245.61.

There is evidence that the replacement cotton was purchased as soon after May, 1961, as possible; it was purchased at the cheapest price available; it was the market value of such cotton on the date purchased; it was nearest in quality to that called for by the contracts; and it was purchased as near to Lubbock as such cotton was available. The cotton as actually purchased had to be adjusted for both quality and price, after allowing appellant credit for transportation and other charges. No cotton was available for purchase between May 1 and the date of the first purchase of replacement cotton, June 1, 1961, which was close enough in the type and kind to allow adjustments for quality and price. Appellee could not purchase other cotton which was available as it was either waste cotton or high-grade cotton which would have made the damages to appellant astronomical.

In response to the special issues, the jury found that appellant did not repudiate the contract prior to May 1, 1961; that the

type and quality of cotton contracted for could not be bought in the open market nearer to Lubbock, Texas, than Houston, Texas, during the period from May 1 through June 23, 1961; that the price, as adjusted, which appellee paid for the 345 bales of replacement cotton was the reasonable value of such cotton in Lubbock on May 1, 1961. After adjusting the cotton and allowing appellant credits which he was due, the difference per bale of the 345 bales of cotton, which appellant was short, was some $23.80 a bale. This difference in the weight and storage penalties and price errors on the cotton delivered by appellant to appellee as found by the jury in the amount of $261.58 resulted in the judgment for appellee in the amount of $8,481.19. The jury also found that appellee used ordinary care, prudence and discretion in replacing the cotton not delivered by appellant under the contracts; that appellee did not breach any term and condition of the confirmation orders or contracts by failing to pay sight drafts at Houston.

The basis of appellant's complaint presented in his Points of Error 1 through 6 is that the trial court submitted the case on the wrong measure of damages.

Appellant argues that in a suit for undelivered goods, the damages recoverable by the buyer is the difference in contract price and the market price at the time and place of the breach (i. e., time of delivery). Appellee recognizes this to be the general rule but says it does not apply to this case. Appellee says that where there is no market value at the time and place of the breach, the correct measure of damages, as submitted by the trial court, is reasonable value less contract price and that this rule is applicable under the facts in this case.

■ There are certain rules of contract law which should first be stated. Where there is a contract between the buyer and the seller for the sale and delivery of personal property, there is owed a duty to mitigate damages after breach. Where a seller fails to deliver the goods which he has contracted to sell, the buyer has the duty to use reasonable diligence and prudence to avoid consequential damages so as to mitigate the damages. Stanley Manly Boys' Clothes v. Hickey, 113 Tex. 482, 259 S.W. 160, (1924); Cameron Steam Pump Works v. Lubbock Light & Ice Co., 167 S.W. 256, (Tex.Civ. App., 1914, Amarillo, n. w. h.); Finberg Trading Co. v. Republic of China, 220 F.2d 844, (5th Cir., 1955); 51 Tex.Jur.2d 269, Sec. 454; 46 Am.Jur. 830, Sec. 707.

■ Appellant, defendant in the court below, recognizes such rule of mitigation, as he plead that appellee-plaintiff was required to mitigate its damages. Where mitigation has been plead, there may be a limitation on the amount of damages recoverable. Further, the burden of proof is upon the party pleading lack of reasonable diligence to show failure to mitigate the damages, as well as the amount the damages would have been reduced had diligence been used. Belcher v. Missouri K. & T. Ry. Co., 92 Tex. 593, 50 S.W. 559, (1899); Stanley Manly Boys' Clothes v. Hickey, supra; Polis v. Alford, 273 S.W.2d 79, (Tex.Civ. App., San Antonio, 1954, writ of err. ref.) and 17 Tex.Jur.2d 114, Sec. 36.

■ It is clear that appellee had no duty to exercise any effort to replace the cotton required to be delivered by appellant until after his repudiation of the contracts on May 1, 1961. Finberg Trading Co. v. Republic of China, supra; Morgan v. Young, 203 S.W.2d 837, (Tex.Civ.App., Beaumont, 1947, writ ref., n. r. e.) and Goedecke v. Henderson, supra.

■ We recognize the general rule that the measure of damages for undelivered goods recoverable by the buyer is the difference in the contract price and the market price at the time and place of the breach. Such general rule presumes a market and a market price. 78 C.J.S. Sales § 543, p. 227; 46 Am.Jur. 799, Sec. 676. Where there is no market or market price, the measure of damages is the difference between the reasonable or actual value and

contract price at the time and place of the breach. Downey v. Hatter, 48 S.W. 32, (Tex.Civ.App., 1898, n. w. h.); 51 Tex. Jur.2d 288, Sec. 461; 78 C.J.S. Sales § 545, p. 230; 46 Am.Jur. 811, Sec. 683; Benjamin Harris & Co. v. Western Smelting & Refining Co., 313 Ill.App. 455, 40 N.E.2d 747, 760, affirmed 381 Ill. 443, 45 N.E.2d 639.

The correct use of the general rule and its inapplicability where there is no market is stated in 51 Tex.Jur.2d 287, Sec. 461:

"Where * * * the seller has wrongfully neglected or refused to deliver, the ordinary measure of damages is the difference between the contract price and the market value of the undelivered goods, at the agreed time and place of delivery. * * * But if the goods sold have no market value, the measure of damages is the difference between the contract price and the price at which the buyer can or does supply himself with goods of like character, using ordinary care to obtain them on the best terms."

See Harrell v. Nalle & Co., 254 S.W. 1027, (Tex.Civ.App., Beaumont, 1923, n. w. h.).

On the former appeal of this case, 388 S.W.2d 728, the Amarillo Court, speaking through Chief Justice Denton, stated the law of this case as follows:

"It is well settled that where a seller has wrongfully neglected or refused to deliver goods to the buyer under a written contract, the measure of damages is the difference between the contract price and the market value of the undelivered goods at the agreed time and place of delivery. * * * If there is no market at the place of delivery, the market value at the nearest point where there is such a value may be taken with the addition of costs of transportation.

* * * In the absence of a market at Lubbock, as found by the jury, the trial court submitted the correct measure of damages in Special Issue No. 7. (Special Issue No. 7 submitted upon the previous trial of this case inquired of the reasonable value of the replacement cotton, as did Special Issue No. 4 upon the trial of the case now before us.)
* * *

" * * * The duty to mitigate damages does not come into play until the injured party has notice of the breach of contract. * * * A defendant who asserts that a plaintiff has failed to prevent or minimize damages in such cases has the burden of proving not only the lack of diligence, but also the amount by which the damages were increased by such failure. * * * "

■ The undisputed evidence in this case shows that there was no cotton, either identical or similar, available for purchase at the time and place of breach. As we view the evidence in this case, the general rule of the difference between the market price and contract price is not applicable to this case. These points are overruled.

■ Appellant next contends that the jury's answer to Special Issue No. 9, that the appellee did not breach any term or condition of the confirmations in question by failing to pay sight drafts in Houston, was contrary to the great weight and preponderance of the evidence.

After a careful review of all the evidence, we find that such finding is not contrary to the great weight and preponderance of the evidence.

We have considered all of appellant's points of error. They are overruled.

Judgment affirmed.