SAMUEL G. SIEGEL and MICHAEL GOODMAN, Respondents, *v.*
HENRY M. HUEBSHMAN, Appellant.

First Department, May 2, 1919.

Sale — refusal of seller to deliver goods because of denial of credit
to purchasers by factors — action by purchaser to recover difference
between contract price and market price of goods — evidence —
contract construed.

In an action by a purchaser to recover the difference between the contract
price and the market price of goods which the defendant had refused to
deliver, it appeared that under the contract between the parties the
purchase price was to be paid without deduction within thirty days after
the end of the month during which the delivery was made, and that
certain factors guaranteed the credit risk and the payment of the bills
of all who purchased from the defendant and determined the amount of
credit to be given to any person dealing with the defendant, including the
plaintiffs, and that the former provisions were inserted in typewriting and
the latter were printed.

*Held*, that it was error for the trial court to hold that the written provisions
were to be disregarded and that the factors had no authority to refuse to
deliver the goods on credit.

The defendant was under no obligation to take upon himself the risk of the
credit, when by the contract it was plainly understood that such risk
was to be assumed by the factors. The defendant, therefore, became
obligated to perform the contract by giving credit only to the extent
that the factors upon whose guaranty he relied approved the same.

The plaintiffs were to have credit for such amount only as the factors approved.

Under the circumstances the plaintiffs were not entitled to recover even though the factors acted in bad faith in refusing credit.

Since the defendant within the contract period offered to deliver the balance of the goods to the plaintiffs for cash, with a deduction of six per cent for the credit period contemplated by the contract, which offer the plaintiffs declined, said plaintiffs sustained no recoverable damages, even though the defendant was guilty of a breach of the contract in refusing to deliver the goods on credit, and even though the price at which defendant offered the goods was less than the market price, for it was not shown that the plaintiffs were unable to pay cash.

If the defendant was responsible for the action of the factors in terminating the credit, and the right to terminate it depended on the good faith of said factors, evidence that credit had been extended to the plaintiffs by other firms, and the extent thereof, and that the plaintiffs subsequently paid in full, would have been incompetent on that issue, for their good faith could not depend on the judgment of or risk taken by others over whom they had no control.

The defendant's motion to dismiss the complaint should have been granted.

APPEAL by the defendant, Henry M. Huebshman, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 2d day of December, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 25th day of November, 1918, denying defendant's motion for a new trial made upon the minutes after the verdict had been reduced in amount.

*George Edwin Joseph* of counsel [*Samuel J. Rawak* with him on the brief], for the appellant.

*Abraham I. Smolens,* for the respondents.

LAUGHLIN, J.:

This is an action for damages arising out of the failure of the defendant to deliver certain blue serge cloth pursuant to an agreement, in writing, made between the parties on the 26th day of April, 1916. It is recited in the contract that the defendant, who was doing business under the name of Henry M. Huebshman & Company, acted as the direct selling agent for the manufacturers of the goods in question. But the contract was not made by the defendant as agent, and his principal was not disclosed and no claim is made

that he is not personally liable. The contract called for the delivery, by the defendant, during the months of July, August and September, 1916, of 40,000 yards of the goods and the purchase price was one dollar and nine cents per yard. The contract provided that the " Terms " of sale were " Net 30 E. O. M.," which meant that the purchase price was to be paid without deduction within thirty days after the end of the month during which the delivery was made. The contract contained an express provision with respect to the *amount* of credit, as follows: " This order is at all times subject. to a limit of credit, determinable at any time by Messrs. Kugelman, Frankland & Foreman, Factors."

The defendant pleaded, in effect, that the determination of the amount of credit by the factors was given to them for the reason that the factors guaranteed the credit risk and the payment of the bills by the plaintiffs. The respondents concede in their points that the factors guaranteed the credit risk and the payment of the bills of all who purchased merchandise from the defendant, and determined the amount of credit to be given to any person dealing with the defendant, including the plaintiffs; but the only evidence received on that subject is to the effect that the goods are consigned to the factors who advance money thereon and guarantee the credit after approving the credit. The defendant, however, offered specific evidence of such guaranty in this instance which was excluded on objection interposed by plaintiffs that it was immaterial, irrelevant and incompetent. Since, however, the plaintiffs fully concede the facts, they may, in the circumstances, be deemed established.

At the time this contract was made there was pending unfinished business between the parties under a similar contract designating the same factors. Prior to the 7th day of September, 1916, the defendant delivered to the plaintiffs 6,326⅛ yards of the goods under the contract in question. He failed and refused to make any further delivery and this action was commenced on the 15th day of June, 1917, to recover the difference between the contract price and the market price of the goods in September, that being the time when the deliveries were to be completed. The contract contained no provision with respect to the quantity to be

delivered during any month. The plaintiffs were manufacturers of children's and men's blue serge suits. After the making of the contract the factors had occasion to complain of the failure of the plaintiffs to make prompt payment under the former contracts. About the 10th of June, 1916, one Huebshman, the defendant's brother, who was the creditman of the factors, but had no personal business relations with the defendant, called on the plaintiff Siegel and stated that in view of the plaintiffs' existing orders this was "a pretty large sized order" and that he wanted to be shown what the plaintiffs were doing and as to how they contemplated handling the account; and Siegel showed him through their piece goods department and exhibited to him the goods that they had on hand, and explained to him the manner in which the plaintiffs intended to nandle the account, and Siegel testified that he exhibited to him ledger accounts of the plaintiffs with other firms from whom they had purchased goods and that Huebshman expressed satisfaction and stated that he would raise the plaintiffs' line of credit from $7,000 to between $18,000 and $20,000. A few days after this interview goods of the value of $10,000 or $11,000 were shipped to the plaintiffs under this contract. Huebshman testified that he did not see the said ledger accounts and that Siegel assured him that the bills would be promptly paid and that what he said to Siegel with respect to credit was that it would be determined from time to time depending on how the bills were paid. The plaintiffs, however, in the majority of instances, continued thereafter to fail to make payments for shipments under former contracts and under this contract when the same became due.

On the 6th day of September, 1916, the plaintiffs ordered a case of these goods of the defendant; the order was referred to the factors which was the regular course of business. Siegel testified that the day after that order was given, Huebshman, the creditman of the factors, called him on the telephone and told him that they were not going to give him any more goods excepting for cash because he was not a satisfactory customer; that he asserted that he did not owe the factors anything at that time, and asked how it could be claimed that he was not a satisfactory customer, to which he says

Huebshman replied, " That don't make a bit of difference; I don't want to do any more business with you," whereupon he replied that the defendant was welching on the contract because the market price had gone up. Siegel's claim that the plaintiffs were not .behind in their payments at that time was based on an alleged modification of the contract which he claimed was made whereby goods received the last few days of any month were, in effect, deemed not to have been delivered until the following month. Siegel testified to an understanding with the *defendant*, but not with the factors, to that effect. That testimony was stricken out. A number of the invoices sent to the plaintiffs by the factors, . however, would seem to show that the plaintiffs were given the benefit of that construction of the contract by the factors, but they are explained on the ground that deliveries were not always made promptly after invoicing and the evidence shows that the factors never consented to that construction of the contract. Siegel admitted that on August first he owed the defendant about $18,000 and that between $8,000 and $10,000 thereof was due at that time, but he says there was this dispute with respect to part of it. He also admitted that the defendant offered him the balance of the goods under the contract for cash and that he refused to take them without the credit of thirty days E. O. M. as specified in the contract. The factors received and invoiced and forwarded the goods and kept the accounts, and according to their accounts eleven payments falling due on June 30, 1916, were not made until from six to twenty-one days after they became due, and thirteen payments due July thirtieth were not made for from seven to twenty-two days thereafter. In July, according to the account as kept by the factors, which followed the contract, the plaintiffs were behind in making payments to the extent of $6,000 or $7,000, and on August first about $10,000 had been due for several weeks.

Huebshman, the creditman of the factors, testified that he complained to the plaintiffs several times during July and August with respect to these overdue accounts and urged them to pay promptly, and on the seventh or eighth of September notified the plaintiff Siegel that owing to the fact that the payments were not being made until about three weeks after the

accounts were due the factors refused to extend further credit, and that they would ship the balance of his order " only on cash terms," and, according to the testimony of the creditman, Siegel replied in substance that he could not take the goods for cash and to cancel his order as he wanted nothing further to do with them or the defendant, and that they might cancel his order, to which the creditman replied, by direction of Kugelman, one of the factors, that they would do so. On the eighteenth of September the defendant notified plaintiffs by letter referring to a letter written to the plaintiffs by the factors on the twelfth of September, which the attorney for the plaintiffs had sent to defendant, stating that the credit was, under the contract, determinable by the factors and beyond his control and that he was and had been at all times prepared to make deliveries through the factors. The provisions of the contract with respect to " *terms* " were inserted in typewriting and the provisions with respect to the limit of credit to be determined by the factors were printed. The learned trial court was of the opinion that for this reason the printed provisions were to be disregarded and that the factors had no authority to refuse to deliver the goods on credit. This we think was error. In the circumstances, the factors having guaranteed the account, those were very material provisions of the contract. The defendant had no control over the factors; and it does not appear that it was within his power to perform the contract by giving the plaintiffs credit without the consent of the factors; but however that may be he was under no obligation to take upon himself the *risk* of the credit when by the contract it was plainly understood that such risk was to be assumed by the factors. The defendant, therefore, became obligated to perform the contract by giving credit only to the extent that the factors, upon whose guaranty he relied, approved the same. The proper construction of the contract is that the purchasers were to have credit for such amount as the factors approved. It was doubtless contemplated by both parties that the factors would act in good faith. It is claimed that they did not, but that claim is not sustained by the evidence. The factors became aware of the fact that plaintiffs were carrying a very large stock of goods for which they were indebted to the extent of hundreds

of thousands of dollars and a considerable amount of it was past due although the terms of credit as to most of it had not expired. Notwithstanding the fact that only a small part of this order had been delivered, and deliveries thereunder were to be completed before October first, plaintiffs had written defendant July twenty-fourth ordering 3,500 yards and saying: " This is all we want this side of October 1st." But since they were acting in their own interest, it is, I think, immaterial so far as the defendant is concerned whether or not they acted in good faith, for he could not hold them on their guaranty if he were able to and did make deliveries on credit after they had determined that they were unwilling further to assume the risk of credit to the plaintiffs. I am, therefore, of opinion that the plaintiffs were not entitled to recover.

It further appears that the defendant within the contract period offered to deliver the balance of the goods to the plaintiff for cash with a deduction of six per cent for the credit period contemplated by the contract, and this the plaintiffs declined. The plaintiffs sustained no recoverable damages, even if the defendant had been guilty of a breach of the contract in refusing to deliver the goods on credit, even though the price at which defendant offered the goods was less than the market price for it was not shown that they were unable to pay cash, and, therefore, it is not necessary to decide whether that would have warranted such a recovery. (*Warren* v. *Stoddart*, 105 U. S. 224; *Lawrence* v. *Porter*, 63 Fed. Rep. 62.)

The recovery could not be permitted to stand in any event on account of errors on the trial and in the submission of the case to the jury. The court left it for the jury to determine whether the credit to the plaintiffs was withdrawn in good faith. On that issue evidence had been received over the defendant's objections and exceptions showing that credit had been extended to the plaintiffs by other firms, and the extent thereof and that the plaintiffs subsequently paid in full. If the defendant were responsible for the action of the factors in terminating the credit, and the right to terminate it depended on the good faith of the factors, the testimony received would have been incompetent on that issue for their good faith could not depend on the judgment of or risk taken by others over whom they had no control. The

court in submitting the case to the jury instructed them, in effect, that they might determine the amount of their verdict by averaging the market prices as given by the different witnesses. After the rendition of the verdict, which was for $7,408.06, the trial court reduced the recovery to $3,704.03, on the ground of this error in the charge, but in determining the amount to which the recovery was thus reduced the lowest market price as given by the witnesses called by the plaintiffs was accepted, and the testimony of three witnesses for the defendant who gave the market price as less than the contract price was disregarded. If the case were for the jury and had been properly submitted they might have accepted the testimony offered in behalf of the defendant to the effect that the market price was less or no greater than the contract price in which event there could have been no recovery. I am of the opinion, however, for the reasons stated, that the defendant's motion to dismiss the complaint should have been granted and that the exception to the court's refusal so to do was well taken.

It follows that the implied finding that the defendant was guilty of a breach of the contract, and the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

Clarke, P. J., Dowling, Page and Merrell, JJ., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.