## HICKEY v. PERKINS DRY GOODS CO.
### (No. 8027.)

(Court of Civil Appeals of Texas. Galveston. March 30, 1921.)

1. Sales ⟨key⟩359(2) — **Evidence held to show that purchaser could have obtained the goods for cash at same price.**

In a dry goods company's action on open account for merchandise sold defendant, evidence *held* to sustain a finding that to minimize damages defendant by paying cash for the goods delivered could have obtained the remainder at the original price.

2. Sales ⟨key⟩418(7)—**No damages where purchaser can obtain similar goods at same price.**

The rule that the measure of damages for breach of contract for sale of goods is the difference between the contract price and the market price at the time of the breach is only applied for the protection of purchasers against the actual damage that is caused him by the seller's failure to deliver the goods, and if the purchaser can supply himself with other similar goods at the price stated in the contract, he has sustained no loss by the breach.

Appeal from District Court, Leon County; J. A. Platt, Judge.

Action by the Perkins Dry Goods Company against H. K. Hickey, with plea of reconvention by defendant. Judgment for plaintiff, and defendant appeals. Affirmed.

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. D. Lacey, of Normangee, for appellant.
J. L. McNees, of Dallas, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover the sum of $1,036.34, alleged to be due upon an open account for goods and merchandise sold him by appellee.

The answer of defendant admits that he had purchased and received from plaintiff the goods and merchandise described in the petition, and that he agreed to pay the purchase price claimed by plaintiff, but by plea in reconvention sought to recover of plaintiff the sum of $757.58 as damages for the failure of plaintiff to sell and deliver to him other goods and merchandise in accordance with the terms of a contract made by plaintiff at the time and as a part of the contract for the purchase and sale of the goods received by the defendant.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the sum of $1,066.74, the price of the goods received by the defendant with interest, less the sum of $8.58 adjudged to the defendant on his plea in reconvention.

At the request of appellant the trial-judge filed the following findings of fact and conclusions of law:

"(1) On the 21st day of May, 1919, the defendant gave to plaintiff's salesman an order for certain goods and merchandise, aggregating, in price agreed on, the sum of $2,325.76.

"(2) That said order was received by said salesman subject to acceptance thereof by plaintiff.

"(3) That plaintiff received said order, which was in writing, and plaintiff later ratified and accepted said order for all of said goods and merchandise.

"(4) That said order provided for delivery of said goods and merchandise during the months of July and August, 1919, and a portion of said goods and merchandise, but not all, was shipped to plaintiff (defendant) during the months of July and August, 1919, but on September 1, 1919, a portion of said goods and merchandise amounting to $1,287.42 had never been shipped to defendant and never were shipped to defendant, and that plaintiff breached its said contract of sale on the 1st of September, 1919.

"(5) That said goods and merchandise were to be paid for by defendant on October 10, 1919.

"(6) That the market price of said undelivered goods and merchandise had risen from the time of the sale to September 1, 1919, from $1,287.42 to $2,045, but defendant by paying the plaintiff cash for said goods and merchandise could have purchased the same at any time up to October 10, 1919, for the original sale price stipulated in said order.

"Conclusions of Law.

"I conclude as a matter of law, from the foregoing facts, that plaintiff is entitled to recover of defendant the sum of $1,066.74, the amount of its debt and interest to date of trial, less $8.58, the amount defendant is entitled to recover on his cross-action, being legal interest from September 1, 1919, on $1,287.42, amount of goods and merchandise undelivered at the time of the breach of the contract by plaintiff, and that plaintiff recover interest on said sum of $1,066.74 from the 24th day of March, 1920, until paid, at the rate of 6 per cent. per annum, and that plaintiff pay all costs of this suit."

The evidence in the case is without material conflict and sustains all of the fact findings of the trial court.

The first assignment of error is as follows:

"The court erred in the following paragraph of its sixth finding of fact: 'But defendant by paying the plaintiff cash for said goods and merchandise could have procured the same at any time up to October 10, 1919, for the original sale price stipulated in said order.' This was error because the evidence in this case does not show that plaintiff ever offered to sell the undelivered goods and merchandise to defendant, after it had breached its contract, at the original contract price."

[1] We think the following letters and testimony fully sustain the finding complained of in the assignment:

Plaintiff wrote Hickey, under date of September 9, 1919, in part as follows:

"We have before us several of your orders which we have not filled for the reason that you are now owing us about $1,200, which we feel is as liberal credit line as we care to extend at this time. We would be very glad to ship some additional merchandise against the orders we hold if you will send us a remittance for approximately one-half of your present account. It may be that you will not require the balance of the merchandise represented by the unshipped portion of the orders. In this event you will please advise that we may enter cancellation."

This letter was received by Hickey.

The Perkins Dry Goods Company again wrote Hickey September 13, 1919, in part as follows:

"As advised in our letter of the 9th inst., you are owing us $1,230.06, which we consider a very liberal credit line, based on the information regarding the financial status of your affairs, and the manner in which your obligations are met, as we have been able to receive. We must repeat that we cannot see it to our interest to ship you any more merchandise at present unless you will send us your check for at least $600 or $700. * * * Not hearing from you favorably in the premises by return mail, we will assume that you wish us to enter cancellation against the balance of the orders which we hold."

And as late as September 20, 1919, plaintiff wrote to defendant in part as follows:

"We have no disposition to deprive you of the use of the merchandise had you cared to pay cash therefor, or else reduce your present indebtedness to the extent above mentioned."

Witness C. H. Dollison testified as follows:

"My name is C. H. Dollison. I am connected with the Perkins Dry Goods Company. I am secretary-treasurer of the company, and have charge of the collections, etc. In the regular course of my business I had occasion to have some business with Mr. Hickey, of Normangee, Tex. * * * He could have bought the outing and all the other goods listed in that order at the prices shown thereon, if he had reduced his indebtedness or paid cash for the goods. It is not the custom of the Perkins Dry Goods Company to refuse to ship goods because they advance. This is not the custom of any good-sized house. It would be detrimental to Perkins Dry Goods Company to refuse to ship a customer that was ready and willing and able to pay his bills. * * * I treated Mr. Hickey just the same as I do any other customer. I did not know him personally, and I have nothing against him. * * *

"It is well understood that, where credit has been declined, the merchandise can be paid for in cash. If he had paid the cash, we would have shipped the goods at price listed. That is the general practice of all business houses."

Under his second assignment of error the appellant contends that, the court having found that appellee breached its contract by refusing to deliver $1,287.42 worth of the goods in accordance with the terms of the contract, and that the market value of said goods at the time the contract was breached was $2,045, judgment should have been given appellant on his plea in reconvention for the difference between the agreed price and the market value of the goods at the time appellee breached its contract.

[2] This contention wholly ignores the fact that the defendant could have obtained the goods at any time up to October 10, 1919, at the price stated in the contract by paying cash therefor. The general rule for the measure of damage for a breach of contract for the sale and delivery of goods is the difference between the contract price and the market price at the time of the breach, but this rule is only applied for the protection of purchasers against the actual damage that is caused him by the failure of the seller to deliver the goods, and, if the purchaser can supply himself with other goods of the same character at the price stated in the contract, he has sustained no loss by reason of the breach of the contract by the seller. There is no pleading in this case by the appellant which would entitle him to recover special damages, nor is it claimed in the pleadings or evidence that he did not have the money with which to pay for the goods.

The following quotation from the opinion in the case of Lawrence v. Porter, 63 Fed. 62, 11 C. C. A. 27, 26 L. R. A. 167, clearly states the reasons for the rule which prohibits the buyer in a case of this kind from the recovery of damages which were not primarily due to the breach of the contract by the seller, but to the failure of the purchaser to avail himself of the opportunity to obtain the goods otherwise than as stipulated in his contract, and, we think, fully answers all of appellant's contentions. The case cited was for a breach of contract of sale brought by the buyer against the seller for failure to deliver a large quantity of lumber according to the terms of the agreement. The lumber was to be delivered by the defendant at their mill on vessels, to be furnished by plaintiff during the shipping season of 1890. As each cargo was received the buyer was to give acceptances payable in 90 days. After the delivery of one cargo the defendant refused for no sufficient reason to deliver the remainder upon the terms of the bargain, but offered to supply lumber needed to complete the bill at a reduction of 50 cents on each 1,000 feet for cash at the time when delivery was required by the broken agreement. The buyers stood upon their contract and demanded delivery upon the credit therein stipulated and refused to take the lumber offered by the delinquent sellers on any other terms than those contained in the agreement. In the course of the opinion the court says:

"The ground upon which the defendants refused to carry out the sale was ostensibly their unwillingness to extend to the plaintiffs a credit of 90 days provided for in the agreement of sale. * * * Credit is often a material element in a contract of sale, whereby the buyer is enabled to operate upon the capital of the seller. Credit extended without interest is, in effect, a sale at the stipulated price less the interest for the period of credit. The damage for a breach of contract to pay money at a particular date is the lawful rate of interest for the period of default. * * * So it would seem that if a buyer, in order to supply himself with the articles which the seller was obligated to sell, is compelled to buy from another, and to pay cash, one element of recovery for the breach would be interest upon his purchase for the period of credit. It is the well-settled duty of the buyer, when the seller refuses to deliver the goods contracted for, to do nothing to aggravate his injury. Indeed, he must do all that he reasonably can to mitigate the loss. If the buyer could have supplied himself with goods of like kind at the place of delivery or other available market, at the time the contract was broken, and neglected to do so, whereby he suffered special damages by reason of the breach, he will not be suffered to recompense himself for such special damages, for the reason that to that extent he has needlessly aggravated a loss. The contention of the plaintiffs is that they could not supply themselves at the time the contract was broken with lumber of the qualities and sizes mentioned in their contract, either at the place of delivery or at any other available market; that they were not required to buy from the defendants, who were already in default; that to have bought from them would operate both to encourage breaches of contracts, and would have been a waiver of all other right of recovery for the breach of their agreement; that to have accepted the proposal of the defendants to supply them for

cash at the reduced price would simply have been to substitute one contract for another, thereby enabling the delinquents to escape all liability for a deliberate and indefensible violation of the bargain. For a breach of contract of sale the law imposes no damages by way of punishment. The innocent party is simply entitled to recover his real loss. If the market value is less than the contract price, the buyer has sustained no loss. This is axiomatic, and needs no citation of authority. If the plaintiffs could have bought at East Jordan, or at any other convenient and available market, at the time of the breach, lumber of like kinds, at the same price or a less price, it would be clear that they would have sustained no general damages. * * * The fact that they could only buy from the defendants does not affect the duty of plaintiffs to minimize their loss as far as they reasonably could. The offer to sell for cash at a reduced price more than equalized the interest for 90 days, which was the value of credit. There seems to be no insurmountable objection in thus permitting a delinquent contractor to minimize his loss. The obligation on the buyer to mitigate his loss, by reason of the seller's refusal to carry out such sale, is not relaxed because the delinquent seller offers the only opportunity for such reduction of the buyer's damage."

Other cases announcing the rule as stated in the opinion quoted are Marsh v. McPherson, 105 U. S. 709, 26 L. Ed. 1139; Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117; Deere v. Lewis, 51 Ill. 254; Siegel v. Huebshman, 187 App. Div. 548, 176 N. Y. Supp. 71.

We think the trial court applied the proper measure of damage, and that the judgment should be affirmed, and it has been so ordered.

Affirmed.

---

⊚⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes