**Jack E. HARRIS, Appellant,**

v.

**E. R. GUNNER et al., Appellees.**

No. 17788.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 3, 1976.

Rehearing Denied Jan. 14, 1977.

Hill, Branham & Graham, and Frank W. Hill, Harris & Harris, and Ulis L. Whitecotton, Arlington, for appellant.

Thompson, Knight, Simmons & Bullion, David Noteward and Thornton Hardie, III, Dallas, for appellees.

## OPINION

MASSEY, Chief Justice.

Plaintiffs E. R. Gunner and Clayhill Farms, Ltd., domiciled in England, brought suit against defendant Jack E. Harris for damages for breach of contract to purchase certain livestock.

Following a jury trial judgment was rendered for plaintiffs based upon the difference between the price contracted and the market value at the times prescribed for delivery of the livestock less the $1,000.00 deposit advanced by defendant to plaintiffs. From this judgment defendant appealed.

We affirm.

As we view the case the most important question relates to the measure of damages appropriate to be allowed in a suit for livestock agreed to be sold and delivered as commodities where the suit is predicated upon anticipatory breach of contract to purchase.

The measure of damage applied by the trial court in the submission of the case to the jury was that prescribed by the Uniform Business and Commerce Code, V.T. C.A. Art. 2.708, "Seller's Damages for Non-Acceptance or Repudiation." By the section is provided "the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this chapter (Section 2.710), but less expenses saved in consequence of the buyer's breach."

■ Our holding is that by the stamp of approval of the Legislature in adopting the Uniform Commercial Code, including Art. 2.708, the seller is entitled in a suit for damages because of anticipatory breach of contract by the buyer to await the time for the tender by buyer of the contract price and recover the difference between the contract price and the market value then ascertainable.

By annotation under Art. 2.708 having possible bearing upon the question we find only the case of *Henderson v. Otto Goedecke, Inc.,* 430 S.W.2d 120 (Tex.Civ.App., Tyler, 1968, writ ref., n.r.e.). Therein are statements, undoubtedly correct prior to the effective date of the Code (September 1, 1967), that the measure of damages in such cases is the difference between the contract price and the market value or price (of the article or right) at time of the breach in instances of anticipatory breach of contract. It is impossible to determine whether the aforementioned case was tried after September 1, 1967; even if it was thereafter tried the breach sued upon had occurred long prior to the Code's effective date. The appeal followed a second trial of the same case after an earlier appeal.

Anyway we have concluded that enactment and adoption of the Code in Texas did not necessarily foreclose the use of the former measure of damages appropriate to a suit for anticipatory breach of contract, but

certainly supplied the additional option to a plaintiff to await the time for performance by the buyer and prove the difference as of that time between the market price and the contract price as a measure of the damages to which he is entitled.

Since we do not perceive any possibility of error in the dates selected by the trial court in submission of the case upon special issues relating to damages by Art. 2.708 of the Code, nor in the amounts found as market values by the jury in response, we are able to conveniently shorten the opinion.

In the instant case it is found that plaintiffs were engaged in the breeding of purebred French Charolais cattle in England in 1969. Defendant, interested in acquiring heifer calves of that breed at the approximate age of six months, entered into a contract with plaintiffs in early 1969, as follows:

". . . I agree to take two (2) pure French heifers each year from you for the next three (3) years, said heifers to be paid for in full when they leave the farm and after they have passed any tests that have been required on the farm . . .. The method of selection shall be as follows: I shall be given the right to select three (3) heifers and you shall have the right to veto any one of my selections . . .. I agree to make the selection on or before the date the heifers are six (6) months old . . .. I further agree that I will make a deposit of $1,000.00 for the following year."

By usage and practice of persons in the business in which plaintiffs were engaged, shown by the evidence without dispute, the appropriate times for performance by both parties were June/July in 1970, 1971, and 1972. These times were when defendant contracted to receive and accept at a prescribed uniform price per animal, the several "sets" of animals, in all a total of six.

The defendant and plaintiffs consummated their contract for the first two animals. There was failure to consummate the contract relative to the second and third "sets." It was because of the failure on the part of the defendant to consummate these purchases in 1971 and 1972 that plaintiffs brought suit for breach of contract.

When the language of the plaintiffs' petition is viewed the important portion to be considered recites: "However since that time (the time when defendant accepted the first animals) Defendant has failed to comply with said contract and agreement and has failed to purchase the heifers due to be purchased in 1971 and 1972, all to Plaintiffs' damage." Defendant filed no exception to plaintiffs' pleadings.

■ By reason of the language quoted defendant contends that he went to trial on pleadings of simple breach of contract and was confronted with proof of anticipatory breach of contract; and that over his objection he suffered submission of the case by the court to the jury as a suit for anticipatory breach of contract.

Defendant's pleadings, in addition to his general denial, was that as applied to the second set of animals contemplated by the contract it was the plaintiffs' inability to perform which occasioned his own failure in respect thereto, and that as applied to the third set of animals it was plaintiffs and not defendant who breached the contract.

When we look to the manner by which the case was submitted to the jury we find only two special issues bearing upon defendant's liability for breach of contract in the court's charge. These were:

"QUESTION NO. 1: Do you find from a preponderance of the evidence that on or about June 22, 1971 there arose reasonable grounds for insecurity on the part of plaintiffs with respect to the anticipated performance of the contract by defendant?

"Answer 'We do' or 'We do not.'

"Answer: 'We do.'

"QUESTION NO. 2: Do you find from a preponderance of the evidence that defendant failed within a reasonable time to give to plaintiffs assurance that he would fulfill his obligations under the contract in question?

"Answer 'We do' or 'We do not.'

"Answer: 'We do.'"

It appears to us that the above findings would be incomplete as a finding of anticipatory breach in the absence of some further finding proper to be added in supplement. As part of the "cluster of issues" of which these would be included authority existed for the trial court to make such further finding. That the court did make any necessary additional finding would be implied. T.R.C.P. 279, "Submission of Issues." See dissertation by former Chief Justice Alexander on "Omitted issues and presumed findings" under "General Commentary" appended to T.R.C.P. 279 in Vernon's Texas Rules Annotated. In this case there was no objection because of a failure to submit issues other than or in addition to those quoted above.

By the theory that the case was one based upon the defendant's anticipatory breach of contract there would be entitlement of the court to make the further necessary findings supported by the evidence. There was evidence that defendant had so evidenced that he would breach his contractual obligations arisen and/or to arise prior to such time that the plaintiffs, on or about June 22, 1971, were justified in treating the contract as breached by the defendant. There was evidence that the plaintiffs did exercise their option to so treat the contract as breached. By the findings made by the jury and impliedly made by the court, plaintiffs were excused from tender of any further performance after June 22, 1971.

By issues submitted the jury found against the defendant's contentions relative to why his contract to take the second set of animals was not consummated. There was not a submission of any special issues making inquiry to settle defendant's contentions relative to why there was failure to consummate purchase of the third set of animals, and no complaint is advanced by reason of any absence of issues.

By the evidence in the record it is clear that defendant was not and could not have been surprised by plaintiffs' proof of the acts of defendant constituting anticipatory breach of contract. Relative to a proper construction of a plaintiff's petition where there is complaint similar to defendant's in the instant case it is said that, in contradistinction to the rule of construing a pleading against the pleader in test by special exception, every reasonable intendment will be indulged, and the pleading is to be construed as liberally as possible in favor of the pleader when there is no objection to it. 46 Tex.Jur.2d, p. 150, "Pleading", Sec. 261, "Liberal construction—Seeking intendment of pleader." Indeed, if at the evidence stage of the trial there had been objection to plaintiffs' evidence on the ground that there were no pleadings to support the anticipatory breach of contract theory, it would, nevertheless, have been proper to have submitted the evidence. There would not have been such a material variance between pleading and proof to occasion exclusion of the evidence, for the variance did not go down to the structural nature of the cause of action declared upon. 46 Tex. Jur.2d, p. 167, "Pleading", Sec. 271, "Application of rule as limited by reasons therefor."

The intendment of T.R.C.P. 90, "Waiver of Defects in Pleading", was to broaden the procedural rules theretofore pertaining, but even antecedent thereto in the test of a pleading to determine whether it supported a cause of action pleaded the inquiry would be directed to two points: Was the averment of which the omission is complained of essential to the particular cause of action or defense? If so, could the averment be found by implication in the pleading?

It was proper for the trial court to construe plaintiffs' pleading as alleging a cause of action for anticipatory breach of contract on the part of the defendant, to submit the case to the jury on this theory, and to found judgment upon the answers returned by the jury plus any necessary additional implied findings. If defendant was surprised by the evidence of plaintiffs and by the special issues he must be held to have waived right of complaint of the pleadings because of the absence of objection. Further, defendant did not object on ground of surprise to any

of the evidence and at no time sought any delay so that he could seek any countering evidence of his own before there was a submission of the case to the jury.

■ In further contention upon the proposition that plaintiffs do not have a proper judgment on the theory of anticipatory breach, defendant directs our attention to the record where there is indication that despite any right on the part of plaintiffs at some prior time to treat the breach by defendant as anticipatory breach of contract, they subsequently evidenced their election to keep the contract alive after and despite defendant's repudiation. It is defendant's contention that by reason of this plaintiffs destroyed any right then existent to proceed on the theory of anticipatory breach of contract.

One answer to this lies in the evidence itself. It is contradictory and such as to entitle the jury to conclude either way, i.e., that there either had or had not been an election by plaintiffs to reinstate or keep the contract alive. Another answer is that there was never any offer by defendant to consummate the contract—even if it were possible for plaintiffs to deliver six-month old calves after the time had expired when they would be anywhere near such age—with an accompanying agreement by plaintiffs to render return performance on his part. Restatement of the Law, Contracts, Sec. 309, "Re-Creation of Duty by Performance or Acceptance of Performance." Any right, theretofore arisen, to prosecute a cause of action for anticipatory breach of contract therefor would persist. Here plaintiffs' right to prosecute such a cause of action arose and was not thereafter extinguished.

■ We have concluded that the special issues which were submitted were all supported by the evidence, and likewise the supplemental findings on the part of the court which are to be implied found support; and that of these actual or implied findings none were so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous.

Our discussion, hereinabove, covers most if not all of the points of error advanced by defendant. In any event we have severally considered all of the defendant's points of error and overrule all of them whether specifically discussed or not.

Judgment is affirmed.